**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Trademark Owner Identified in Exhibit 1, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  1:24-cv-00207 |
| | ) | |
| v. | ) | Dist. Judge Nancy L. Maldonado |
| | ) | |
| The Partnerships and | ) | Mag. Judge Sunil R. Harjani |
| Unincorporated Associations | ) | |
| Identified on Schedule "A", | ) | |
| | ) | |
| Defendants. | ) | |

<u>**Unreported Opinions Cited in Support of**</u>
<u>**Plaintiff's Motion for Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3)**</u>

2012 WL 1038752
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

FACEBOOK, INC., Plaintiff,

v.

BANANA ADS, LLC et al., Defendants.

No. C–11–3619 YGR.
|
March 27, 2012.

**Attorneys and Law Firms**

Brian Patrick Hennessy, Palo Alto, CA, Ryan Spear, Seattle, WA, for Plaintiff.

**Order Granting Motion of Facebook to Serve Certain Defendants by Alternative Means**

YVONNE GONZALEZ ROGERS, District Judge.

**\*1** Plaintiff Facebook, Inc. ("Facebook") filed this Trademark Infringement action against 47 named and 45 "Doe" Defendants on July 22, 2011. Facebook's Amended Complaint, filed on December 12, 2011, alleges six claims: (1) cybersquatting and contributory cybersquatting; (2) trademark infringement and contributory trademark infringement; (3) false designation of origin and contributory false designation of origin; (4) trademark dilution and contributory trademark dilution; (5) breach of contract; and (6) tortious interference with prospective economic advantage. According to Facebook, despite its best efforts, it has been unable to serve 14 of the named defendants.

Facebook has filed a Motion to Serve Certain Defendants by Alternative Means, specifically email, on the grounds that service by email will provide actual notice of this case and that service by email is not prohibited by international agreement.

Having carefully considered the papers submitted and the record in this action, and for the reasons set forth below, the Court hereby **Grants** the Motion to Serve by Alternative Means.[1]

## I. Background

This is an action to enjoin the Defendants' alleged typosquatter schemes. Facebook alleges that the Defendants register internet domain names that are confusingly similar to facebook.com, *e.g.,* facebook.com, so that potential users of Facebook's website who enter a typo are diverted to the typosquatter's website, which is designed to look strikingly similar in appearance to Facebook's website, including using Facebook's distinctive trademark, to trick users into thinking they are using Facebook's website. When the Defendants registered these domain names, they were required to provide accurate contact information and to update that information. Facebook has provided evidence that the physical addresses associated with the Defendants' domain names are invalid because the domain owners either provided false registration information or failed to update the information.[2]

Facebook's Amended Complaint lists 47 named defendants—15 domestic and 32 foreign—and 45 "Doe" Defendants. Facebook has dismissed 19 of the Foreign Defendants and 2 of the Domestic Defendants. This leaves 26 named defendants, 14 of whom Facebook has been unable to serve—10 Foreign Defendants, 4 Domestic Defendants. Facebook has attempted to contact these Defendants by postal mail, email, and telephone.[3] Facebook seeks permission to use email to effect service on the 10 Foreign Defendants under Federal Rule of Civil Procedure 4(f)(3) and the 4 Domestic Defendants under Federal Rule of Civil Procedure 4(e)(1).

## II. Discussion

### A. Service by Email on Foreign Defendants

Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals. Fed.R.Civ.P. 4(h)(2). Rule 4(f)(3) permits service on individuals in a foreign country as follows: "Unless federal law provides otherwise, an individual ... may be served at a place not within any judicial district of the United States: ... (3) by other means not prohibited by international agreement, as the court orders." Fed.R.Civ.P. 4(f)(3). It is left "to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016 (9th Cir.2002). The Ninth Circuit has approved service on foreign defendants by email pursuant to Rule 4(f)(3) where the defendants were either unreachable by other means or had no known physical address. *Id.* at

1017. To satisfy constitutional norms of due process, the alternative method of service must be "reasonably calculated, under all the circumstances, to apprise the interested parties of the action and afford them an opportunity to present their objections." *Id.* at 1016. Thus, to establish that service by email is appropriate, a plaintiff must show: (1) that service by email is "reasonably calculated to provide actual notice" to the defendant; and (2) international agreement does not prohibit such service. *Id.* at 1014, 1016.

### 1. Service by Email Is "Reasonably Calculated to Provide Actual Notice" to the Foreign Defendants.

**\*2** Here, service by email is reasonably calculated to provide actual notice. First, the Foreign Defendants are involved in commercial internet activities. They registered internet domain names, which Facebook alleges the Defendants have used for commercial purposes. Indeed, the alleged typosquatting schemes depend on these commercial internet activities. Second, the Foreign Defendants rely on electronic communications to operate their businesses and Facebook has valid email addresses for each of the Defendants. Finally, Facebook has demonstrated that it has made attempts to serve the Defendants at physical addresses that proved unsuitable for service. Based on the foregoing, service by email appears to be not only reasonably calculated to provide actual notice to the Foreign Defendants but the method most likely to apprise the Foreign Defendants of the action.

### 2. International Agreement Does Not Prohibit Email Service

Facebook also has demonstrated that service via email is not prohibited by an international agreement. The Foreign Defendants registered domain names to physical addresses in Anguilla (Intercontinental Domain, Inc.), Antigua (Pioneer Enterprises, Ltd.), Canada (Karrie–Lee Karreman, PPX.com, and Elise Petri), Hong Kong (YourTick), Panama (Cleanser Products, Mackrooner Ltd. Inc., and Newgate Services/ SMTM Enterprises Ltd.), and Thailand (Counter Balance Enterprises Ltd.). Anguilla,[4] Antigua, Hong Kong,[5] and Canada are signatories to or bound by the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents. 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ("Hague Service Convention"). *See* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php? act=conventions.status & cid=17, last visited Mar. 22, 2012. Facebook cites cases from this District finding that the Hague Service Convention does not expressly prohibit email

service.[6] *See Gucci America, Inc. et al v. Huoqing,* Case No. 09–05969 JCS, Dkt. No. 17 (N.D.Cal. Mar. 11, 2010) (China); *craigslist, Inc. v. Eddie Temple et al.,* Case No. 09– 04738 JW, Dkt. No. 21 (N.D.Cal. May 20, 2010) (Canada); *Williams–Sonoma Inc. v. Friendfinder Inc.,* Case No. 06– 06572 JSW, 2007 WL 1140639 (N.D.Cal. Apr.17, 2007) (Canada). As to the other Foreign Defendants, Facebook cites to cases in this District finding that service by email is not prohibited by international agreement in Panama or Thailand. *craigslist, Inc. v. Troopal Strategies, Inc.,* Case No. 09– 04741 JW, Dkt. No. 37 (N.D.Cal. Nov. 24, 2010) (Panama); *craigslist, Inc. v. Meyer,* Case No. 09–4739 SI, Dkt. No. 29 (N.D.Cal. Jul. 26, 2010) (Thailand). Based on the foregoing, the Court concludes that Facebook has demonstrated that service on the Foreign Defendants via email is not prohibited by international agreement.

Therefore, Court **Grants** Facebook's Motion to serve the Foreign Defendants via email.

### B. Service by Email on Domestic Defendants

**\*3** Federal Rule of Civil Procedure 4(e)(1) provides that "an individual ... may be served in a judicial district of the United States by: following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed.R.Civ.P. 4(e)(1). As this Court is located in California, it may authorize service of process in conformity with California law. Section 413.30 of the California Code of Civil Procedure provides that "[w]here no provision is made in this chapter or other law for the service of summons, the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." Cal. Civ.Code § 413.30.

For the same reasons discussed above, service by email is "reasonably calculated to give actual notice" to the Domestic Defendants. The Domestic Defendants, like the Foreign Defendants, are all engaged in internet-based commercial activities and rely on email as a means of communication. Facebook's attempts to locate and contact the Domestic Defendants by postal mail and telephone have failed. Thus, under these circumstances, service by email would be the best method for providing actual notice to these Defendants.

Facebook, Inc. v. Banana Ads, LLC, Not Reported in F.Supp.2d (2012)

2012 WL 1038752

Therefore, Court **Grants** Facebook's Motion to serve the Domestic Defendants via email.

### III. Conclusion

For the foregoing reasons, the Motion to Serve Certain Defendants by Alternative Means is **Granted**.

Plaintiff Facebook, Inc. may serve this Order, the Summons, and the Amended Complaint on the following Defendants by sending email messages, return receipt requested, to the following email addresses:

| Defendant | Email address(es) |
| --- | --- |
| Cleanser Products | cleanserproducts@gmail.com<br>posinc@hushmail.com |
| Counter Balance Enterprises Ltd. | counterbalanceltd@gmail.com<br>counter14 @ymail.com |
| Intercontinental Domain, Inc. | domainadmin@icdomainsinc.com |
| Karrie–Lee Karreman | directsurveysol@yahoo.ca |
| Mackrooner Ltd. | mackroonerltd@gmail.com |
| Newgate Services/SMTM Enterprises | mbjvmanagement@gmail.com |
| PPX.com | sales@ppx.com<br>sales@impulseleads.com |
| Elise Petri | support@consumersrewardsolutions.com<br>elisepetri@yahoo.com |
| Pioneer Enterprises Ltd. | pioneerenterprisesltd@gmail.com<br>pioneer3@gmx.com |
| Your Tick | domaincontroller@yourtick.com<br>kwo_kwing@hotmail.com<br>kwokwing @hotmail.com.tv |
| Reggie Bush | yoshineman@gmail.com |
| Gilend API | support@xstreamhost.com |
| Stormwest Corp. | britt@stormwest.com |
| Tomato, Inc. | tom_mou@hotmail.com |

Any return of service on the above-listed Defendants that Facebook files must include proof that Facebook has attempted, at a minimum, to verify actual receipt of the email message.

 **\*4** Facebook shall provide courtesy copies of this Order, the Summons, and the Amended Complaint to the attorney(s)

who previously declined to accept service on behalf of Karrie–Lee Karreman and Elise Petri.

This Order Terminates Docket Number 67.

**It Is So Ordered.**

Facebook, Inc. v. Banana Ads, LLC, Not Reported in F.Supp.2d (2012)

2012 WL 1038752

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1038752

Footnotes

1   Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7–1(b), the Court finds that this motion, which has been noticed for hearing on March 27, 2012, is appropriate for decision without oral argument. Accordingly, the Court **Vacates** the hearing set for March 27, 2012.

2   This evidence included the Declaration of counsel, Ryan Spear, thoroughly describing the extensive efforts to locate, contact, and serve the Defendants, and 438 pages of exhibits documenting those efforts.

3   Facebook even attempted to serve two of the Defendants, Karrie–Lee Karreman and Elise Petri, through counsel representing them in unrelated lawsuits in Minnesota but counsel refused to accept service on their behalf.

4   Anguilla is an overseas territory of the United Kingdom, which is a signatory to the Hague Service Convention. *See* U.S. Dep't of State, Anguilla Country Specific Information, http://travel.state .gov/travel/cis_ pa_tw/cis/cis_1107.html# country, last visited Mar. 22, 2012.

5   Hong Kong is a special administrative region of the People's Republic of China, which has advised the United States that the Hague Service Convention is in effect in Hong Kong. *See* U.S. Dep't of State, Hong Kong Judicial Assistance, http:// travel.state.gov/law/judicial/judicial_ 650.html, last visited Mar. 22, 2012.

6   Facebook notes that even if the defendants are residing in a nation in which the Hague Service Convention is in effect, the result would be the same because Article 1 of the Hague Service Convention states that the Convention does not apply when the address of the person to be served is unknown.

End of Document                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2415186
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

In re LDK SOLAR SECURITIES LITIGATION.
This Document Relates to: All Actions.

No. C 07–05182 WHA.
|
June 12, 2008.

ORDER GRANTING PLAINTIFFS'
MOTION TO AUTHORIZE SERVICE TO
UNSERVED DEFENDANTS LOCATED
ABROAD AND VACATING HEARING

WILLIAM ALSUP, District Judge.

### INTRODUCTION

**\*1** In this federal securities class action, only four out of
the ten defendants have been served. The remaining six
defendants are located in China. Plaintiffs therefore move
to authorize service on the unserved defendants located
abroad pursuant to FRCP 4(f)(3). For the reasons stated
below, the motion is **GRANTED.**

### STATEMENT

In March 2008, plaintiffs filed a consolidated class action
complaint against corporation LDK, its two subsidiaries
(one in China and one in the United States), and
seven individual defendants. Plaintiffs alleged violations
under various federal securities laws. Only LDK, LDK
Solar USA, Inc. (LDK's United States subsidiary), chief
executive officer Xiaofeng Peng, and chief financial officer
Jack Lai have been served. The remaining six defendants
who reside, work, and/or are located in China are:
Jiangxi LDK Solar (LDK's Chinese subsidiary), president
and chief operating officer Xingxue Tong, vice president
and chief accounting officer Qiqiang Yao, executive vice
president and board member Liangbao Zhu, senior vice
president and board member Yonggang Shao, and non-
executive director Gang Wang.

China is a party to the Hague Convention on the Service
Abroad of Judicial and Extra–Judicial Documents in Civil
or Commercial Matters. The provisions entered into force
between the United States and China in 1991. Pursuant to
the Convention, service can be effected in China through
the Chinese Central Authority. China, however, objected
to Article 10 of the Convention, which stated:

> Provided the State of destination does not object, the
> present Convention shall not interfere with—
>
> a) the freedom to send judicial documents, by postal
> channels, directly to persons abroad,
>
> b) the freedom of judicial officers, officials or other
> competent persons of the State of origin to effect service
> of judicial documents directly through the judicial
> officers, officials or other competent persons of the
> State of destination,
>
> c) the freedom of any person interested in a judicial
> proceeding to effect service of judicial documents
> directly through the judicial officers, officials or other
> competent persons of the State of destination.

Convention on Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters,
Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Service
therefore cannot be effected "by postal channels" or
through the judicial officers, officials or other individuals
of the state of destination. To date, plaintiffs have not
tried to serve any of the unserved defendants through the
Chinese Central Authority, claiming that the procedure is
too time-consuming, costly, and potentially fruitless.

### ANALYSIS

FRCP 4(f) directs how to effect service on an individual
in a foreign country. An individual may be served at
a place not within any judicial district of the United
States "by an internationally agreed means of service
that is reasonably calculated to give notice, such as those
authorized by the Hague Convention on the Service
Abroad of Judicial and Extrajudicial Documents." FRCP
4(f) (1). The rule further provides service "by any other
means not prohibited by international agreement, as the
court orders." FRCP 4(f)(3). Plaintiffs move for an order
pursuant to FRCP 4(f)(3), permitting them to serve the
six yet-unserved defendants through LDK's office, which

Case: 1:24-cv-00207 Document #: 14-4 Filed: 01/29/24 Page 7 of 22 PageID #:1613

is located in California. That way, plaintiffs say, the office can transmit the relevant documents to the unserved defendants, each of whom is a director, senior officer, or subsidiary of LDK.

**\*2** The four defendants who have been served oppose this motion. They first argue that FRCP 4(f) requires plaintiffs to serve foreign defendants in accordance with "any internationally agreed means reasonably calculated to give notice," such as the Hague Service Convention. This is not true, as FRCP 4(f)(3) allows for an alternate means of service as long as it is directed by a court and not prohibited by international agreement. Significantly, FRCP 4(f)(3) stands independently of FRCP 4(f)(1); it is not necessary for plaintiffs to first attempt service through "internationally agreed means' before turning to "any other means not prohibited by international agreement." In *Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014 (9th Cir.2002), the Ninth Circuit stated:

> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2). Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or." Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

* * *

The advisory committee notes ("advisory notes") bolster our analysis. Beyond stating that service ordered under Rule 4(f)(3) must comport with constitutional notions of due process and must not be prohibited by international agreement, the advisory notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means. Specifically, the advisory notes suggest that in cases of "urgency," Rule 4(f)(3) may allow the district court to order a "special method of service," even if other methods of service remain incomplete or unattempted.

Consequently, plaintiffs are free to attempt an alternate means of service without having to show an attempt of service through the Chinese Central Authority —*assuming plaintiffs do not violate any international agreement.*

Defendants then contend that plaintiffs' requested form of service *does* violate an international agreement. The Ninth Circuit has held:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.

*Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014 (9th Cir.2002). Neither party disputes that China is a signatory to the Convention. As a signatory to the Convention, however, China explicitly objected to Article 10 of the Convention. Article 10 allowed for service "by postal channels" or through judicial officers, officials, or other persons in the state of destination.

**\*3** Defendants then say that the reasoning in *Agha v. Jacobs,* 2008 WL 2051061, \*1 (N.D.Cal.2008) (Judge Seeborg), is instructive. There, the court denied plaintiff's request to serve the summons and complaint—via email or facisimile—to the defendants, who were located in the Federal Republic of Germany. Judge Seeborg rejected *Rio* because it "involved service in a country that is not a member of the Hague Convention." *Agha,* 2008 WL 2051061 at \* 1 n .1. Like the situation in *Agha,* defendants say, the instant action involves a country that is a signatory to the Convention and that has objected to service by postal channels. *Rio* therefore does not apply.

Defendants' argument is unpersuasive. It is true that *Rio* involved a non-signatory country. Nonetheless, the Ninth Circuit's reasoning in the *Rio* decision is still applicable— as long as the service is "court-directed and not prohibited

by an international agreement," service can be effected pursuant to FRCP 4(f)(3). *Rio,* 284 F.3d at 1014. Here, plaintiffs do not request to effect service in China via mail; rather, they request to serve the remaining six unserved defendants through LDK's California office. There is no service by postal channels, as was the case in *Agha* (where the judge concluded that service by email or facsimile was the functional equivalent of service by mail). Plaintiffs are therefore correct that nothing in the Convention bars the requested means of service.

Defendants further argue that plaintiffs must show that the signatory destination nation has refused to cooperate. "[A] plaintiff seeking relief under Rule 4(f)(3) must adequately support the request with affirmative evidence of the lack of judicial assistance by the host nation—conclusory assertions of the futility of Hague service are unavailing." *Arista Records LLC v. Media Services LLC,* 2008 WL 563470, *1 (S.D.N.Y.2008)* (Judge Buchwald). Because plaintiffs have not presented any facts indicating that China has refused to cooperate with the service provisions set forth in the Convention, the motion should be denied, defendants say.

Again, this argument has little merit. The Ninth Circuit held, "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. *No other limitations are evident from the text." Rio,* 284 F.3d at 1014 (emphasis added). It is unnecessary for plaintiffs to show the lack of judicial assistance by the host nation. Instead, plaintiffs "needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention. Thus, when [the plaintiff] presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service." *Id.* at 1016. In the instant action, plaintiffs have shown the difficulty of serving the unserved defendants located abroad. Defense counsel have refused to accept service on behalf of the unserved defendants on the ground that they do not represent the international defendants.

(Yet, oddly, defense counsel oppose this motion on behalf of the unserved defendants.) According to the sworn declaration of plaintiffs' counsel, defense counsel has said that "it might be impossible to serve some of [the unserved defendants]" (Kaplan Decl. ¶ 3).

**\*4** Finally, the court-ordered method of service must still be reasonable. "Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process. To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Rio,* 284 F.3d at 1016. This order finds that the proposed form of service is constitutionally acceptable. Serving the remaining six defendants through the California office is reasonably calculated, under these circumstances, to apprise them of the pendency of the action and afford them with the opportunity to respond. After all, LDK trades on the New York Stock Exchange, its subsidiary is located in California, and the remaining defendants are all sophisticated officers, directors, or the Chinese subsidiary of LDK. Accordingly, plaintiffs' motion to authorize service to the unserved defendants abroad is granted.

## CONCLUSION

Because plaintiffs' requested form of service is not prohibited by international agreement, the motion authorizing service through LDK's California office to unserved defendants located abroad is **GRANTED.** Because a hearing is unnecessary, the hearing set for June 19, 2008, is **VACATED.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2415186

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **LEVI STRAUSS & CO.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16 C 7824 |
| ) | |
| **ZHEJIANG WEIDU GARMENT CO., LTD.** ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM ORDER</u>

yogee-mall, one of the many defendants in this action brought by Levi Strauss & Co. ("Levi Strauss") charging the pirating of its federally registered trademarks by a host of claimed infringers, has filed a motion (1) for its dismissal pursuant to Fed. R. Civ. P. 12(b)(5) and (2) to quash the substituted service on it that this Court had authorized based on submissions made by counsel for Levi Strauss. yogee-mall contends that such substituted service was unauthorized because Levi Strauss was obligated to pursue the method prescribed by the Hague Convention instead. Levi Strauss' counsel has just filed its response to the yogee-mall motion, and that response torpedoes the motion because it has been based on demonstrably false assertions on the part of yogee-mall.[1] What deep-sixes the yogee-mall motion is stated at the outset of the Hague Convention in its Article I:

---

[1] This Court should not be misunderstood as ascribing that falsity to the counsel who have appeared in this action on behalf of yogee-mall. It assumes that counsel advanced their client's contention in good faith reliance on the client's representations to them.

This Convention shall not apply where the address of the person to be served with the document is not known.

It is unnecessary for this Court to replicate the entire voluminous submission by Levi Strauss' counsel that is the product of the extensive investigative effort that it was forced to undertake because of the bogus assertions advanced by yogee-mall. Instead this Court attaches the current Levi Strauss response (Dkt. No. 48) as its own and attaches the text of that response (but none of its bulky exhibits) to this opinion.

In sum, yogee-mall's motion (Dkt. No. 45) is denied, and no further status hearing date is set in this action. This Court will await a motion by Levi Strauss for the entry of a final judgment order terminating this case when its counsel deems that appropriate.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 17, 2016

Case: 1:24-cv-00207 Document #: 14-4 Filed: 01/29/24 Page 11 of 22 PageID #:1617

MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd., Not Reported in F.Supp.2d...

2008 WL 5100414

2008 WL 5100414
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

MacLEAN-FOGG COMPANY and
MacLean Power, LLC, Plaintiffs,

v.

NINGBO FASTLINK EQUIPMENT
CO., LTD., David Zhang and
Charlie Jin, Defendants.

No. 08 CV 2593.
|
Dec. 1, 2008.

**Attorneys and Law Firms**

Dana Andrew Alden, Robert Joseph Ambrose, The Alden
Law Group, LLP, Oak Brook, IL, Bradley C. Graveline, Brian
D. Fergemann, Milena Jacqueline Spencer, Winston & Strawn
LLP, Chicago, IL, for Plaintiffs.

*MEMORANDUM OPINION AND ORDER*

MICHAEL T. MASON, United States Magistrate Judge.

 **\*1** Plaintiffs, MacLean-Fogg Company and MacLean
Power LLC, filed this action against defendants Ningbo
Fastlink Equipment Co., Ltd. ("Ningbo Fastlink"), David
Zhang ("Zhang") and Charlie Jin ("Jin") (collectively
the "Ningbo Defendants"), as well as other defendants
later dismissed following settlement, for alleged trademark
infringement. In their complaint, plaintiffs allege that Ningbo
Fastlink is a Chinese company with its principal place of
business in Tiantong, Wuxiang, Yinzhou, Ningbo Zheijung,
China. Plaintiffs further allege that Zhang resides in China
and is or was employed by Ningbo Fastlink, and Jin
resides in China and is employed by Ningbo Fastlink.
Presently before this Court is plaintiffs' motion for an
order for alternative service pursuant to Fed.R.Civ.P. 4(f)
(3). Specifically, plaintiffs ask this Court to enter an order
finding that: (1) service by e-mail and facsimile on the Ningbo
Defendants is proper pursuant to Fed.R.Civ.P. 4(f) (3); (2)
plaintiffs' prior service attempts were reasonably calculated

to notify the Ningbo Defendants of this action; and (3) the
summons and complaint have been properly served pursuant
to Fed.R.Civ.P. 4(I)(2)(B). For the reasons set forth below, this
Court finds that under the circumstances of this case, service
by e-mail and facsimile is proper and is reasonably calculated
to notify the Ningbo Defendants of this action. Accordingly,
plaintiffs are granted leave to effectuate service via e-mail and
facsimile.

Turning first to plaintiffs' efforts to effectuate service,
we note that Ningbo Fastlink maintains a website,
www.fastlink.com.cn, The website indicates that the
company's address is: Ningbo Fastlink Equipment Co., LTD;
Tiantong, Wuxiang, Yinzhou, Ningbo, Zhejiang, China (the
"Ningbo Fastlink Address").[1] Plaintiffs allege that they
attempted to serve the complaint and summons by Federal
Express to each of the Ningbo Defendants at the Ningbo
Fastlink Address. Plaintiffs attach as a group exhibit to
their motion Federal Express signature pages for three
packages and tracking reports indicating successful delivery
and signature on May 26, 2008. Because the signatures
are in Chinese characters, this Court cannot determine the
individuals who signed for the specific packages. However,
the tracking reports indicate that Federal Express delivered
the packages to the "Guard / Security Station."

On August 18, 2008, almost three months after Federal
Express delivered the packages, an unidentified individual
returned the packages to the Chinese Federal Express
facility and reported that the recipients had moved from the
Ningbo Fastlink Address. Despite this representation, Ningbo
Fastlink's website continues to list the Ningbo Fastlink
Address as the point of contact for (and address of) the
company.

Plaintiffs also attach as an exhibit to their motion
an e-mail, dated August 26, 2008, evidencing service
of the complaint, summons, and related documents to
the following e-mail addresses: "david@fastlink.com.cn"
"nxlj8888 @vip.sina.com" and "Cjin@fastlink.com.cn".
Plaintiffs aver that these e-mail addresses are for Zhang,
Ningbo Fastlink and Jin, respectively. Ningbo Fastlink's
website identifies Jin as the company's general manager and
states that he may be contacted at the aforementioned e-mail
address. Finally, plaintiffs attach as a group exhibit facsimile
confirmation sheets for each of the Ningbo Defendants at
the following fax number: 011-86-574-88486773. Ningbo
Fastlink's website continues to list this number as a contact
point.

Case: 1:24-cv-00207 Document #: 14-4 Filed: 01/29/24 Page 12 of 22 PageID #:1618

MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd., Not Reported in F.Supp.2d...

2008 WL 5100414

**\*2** The Ningbo Defendants are residents of China. Pursuant to Fed.R.Civ.P. 4(f), an individual "may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention ... [or] (3) by other means not prohibited by international agreement, as the court orders." A corporation, partnership, or association not within any judicial district of the United States may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed.R.Civ.P. 4(h)(2). China and the United States are both signatories to the Hague Convention. The Hague Convention does not prohibit service by e-mail or facsimile. *See Williams-Sonoma Inc. v. Friendfinder Inc .,* 2007 WL 11140639, \*2 (N.D. Cal. April 17, 2007). Therefore, this Court concludes that in certain circumstances service of process via e-mail and facsimile is appropriate and may be authorized under Fed.R.Civ.P. 4(f)(3).

Having found that service via e-mail and facsimile is facially permitted by Fed.R.Civ.P. 4(f)(3), we must determine if the proposed method of service in this case comports with constitutional notions of due process. To meet this requirement, the method of service must be reasonably calculated, under all of the circumstances, to apprise the Ningbo Defendants of the pendency of this action and afford them an opportunity to present objections. *See, e.g. Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1017 (9th Cir.2002); *Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412, \*2-3 (S.D.N.Y. March 12, 2007). Here, plaintiffs have demonstrated that the Ningbo Defendants conduct business through their website and correspond with customers via e-mail and facsimile. Plaintiffs have also demonstrated a high likelihood that the Ningbo Defendants would receive and respond to e-mail communications, as shown by the inclusion of e-mail addresses on Ningbo Fastlink's website. Accordingly, we find that service upon the Ningbo Defendants by e-mail and facsimile is reasonably calculated to apprise them of the pendency of this action and afford them an opportunity to present their objections. *See, e.g. Rio Properties,* 284 F.3d at 1017-18 (concluding that service by e-mail was reasonably calculated to apprise defendant of the action and afford it an opportunity to respond); *Popular Enterprises, LLC v. Webcom Media Group, Inc.,* 225 F.R.D. 560, 563 (E.D.Tenn.2004) (granting motion to permit service on defendant by e-mail).

Plaintiffs also ask this Court to find that the summons and complaint have been properly served. We do not. Rule 4(f)(3) allows for service by other means "as the court orders," it does not explicitly authorize the Court to retroactively approve a means of service. Fed.R.Civ.P. 4(f)(3); *Brockmeyer v. May,* 383 F.3d 789, 806 (9th Cir.2004) (collecting cases). Although this Court does not find that the service effectuated was improper, in an abundance of caution, we order plaintiffs to re-serve the complaint, summons and any related documents via e-mail and facsimile by December 16, 2008.

**\*3** Accordingly, for the reasons stated above, plaintiffs' request that this Court find the complaint and summons were properly delivered pursuant to Fed.R.Civ.P. 4(l)(2)(B) is denied. *See id.* Plaintiffs' motion is granted as to all other aspects.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5100414

Footnotes

1    This address differs from that alleged in plaintiffs' complaint. The Ningbo Fastlink Address is "Zhejiang, China" while the complaint identifies Ningbo Fastlink's address as "Zheijung, China."

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GIANNI VERSACE, S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-05385 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant Shop2827057's motion to dismiss [47] is denied. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file an answer by 3/13/2019. If Defendant Shop2827057 fails to answer by 3/13/2019, it will be defaulted. The Clerk of Court shall send a copy of this Order to Defendant Shop2827057 at the address indicated on its motion [47]. In addition, Plaintiff shall send Defendant Shop2827057 a copy of this Order electronically in the same manner as service was originally accomplished. Status hearing set for 2/27/2019 is stricken and reset for 3/28/2019 at 9:00 AM. See the accompanying Statement for details.

## STATEMENT

Plaintiff Gianni Versace, S.P.A. ("Versace") alleges that a number of online vendors (collectively, "Defendants"), identified primarily by their domain names and online marketplace accounts, sold counterfeit versions of Versace's merchandise to Illinois residents via commercial Internet stores. Due to the difficulty in identifying the correct physical addresses of Defendants, as well as Defendants' demonstrated ability to use electronic communications in contacting customers and service providers, Versace requested that the Court approve electronic service of the summons and complaint on Defendants. (*See* Pl.'s Memo in Supp. of Mot. for Electronic Service at 1–2, Dkt. No. 18.)

On August 16, 2018, this Court entered an order directing that Defendants be served by email and electronic publication pursuant to Federal Rule of Civil Procedure 4(f)(3), which allows the Court to authorize service of process by any means not prohibited by international agreement. (8/16/2018 Minute Order, Dkt. No. 25.) *See also* Fed. R. Civ. P. 4(f)(3). Versace subsequently served Defendants, including Defendant Shop2827057, by electronically publishing the Complaint and Summons on a website to which Defendants' Domain Names redirect and by sending the same to the email addresses identified as belonging to the infringing accounts. Shop2827057 now asserts that such service is improper, claiming that China's "opposition to Article 10 of the Hague Convention" prohibits Versace from directly serving Shop2827057 in that

manner. (Def. Mot. to Dismiss, Dkt. No. 47.) Shop2827057 further claims that Versace should contact the Chinese Ministry of Justice regarding attempted service. *Id.*

But the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). Indeed, the Hague Convention expressly does not apply "where the address of the person to be served with the document is not known." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 1, Nov. 15, 1965 ("Hague Convention"). That is precisely the case here: the eBay Internet store identified with Shop2827057 provided no physical address or identification of the owner. Since Versace did not and could not have known Shop2827057's true name or address, the Hague Convention does not apply and court-directed service was proper under Rule 4(f)(3). *See, e.g., MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (Dkt. No. 42) (finding electronic service proper because defendant's address was unknown).

Nor must Versace attempt service by contacting the Chinese Ministry of Justice, as suggested by Shop2827057. The plain language of Rule 4 requires only that service be made as directed by the court and not prohibited by international agreement. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002) (noting no requirement that plaintiff attempt service by other means before petitioning the court for leave to serve under Rule 4(f)). Moreover, email service of an online business defendant is warranted when the defendant has no readily discoverable physical address, conducts business over the Internet, and uses email regularly in contacting customers. *Id.* at 1017–18 (finding email service to be appropriate and the most likely method of reaching foreign Internet business entity).

For the reasons explained above, Defendant Shop2827057's motion to dismiss is denied. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), the Court grants Shop2827057 fourteen days—*i.e.*, until March 13, 2019—to file an answer. If Shop2827057 fails to answer within that time, it will be found in default pursuant to Federal Rule of Civil Procedure 55(a).

Dated:  February 27, 2019

Andrea R. Wood
United States District Judge

2

2007 WL 269087
Only the Westlaw citation is currently available.
District Court of Guam.

NANYA TECHNOLOGY
CORP., et al., Plaintiffs
v.
FUJITSU LIMITED, et al., Defendants.

No. CIV 06-00025.
|
Jan. 26, 2007.

**Attorneys and Law Firms**

Alfonso G. Chan, Shore Chan Bragalone LLP, Dallas, TX, John S. Unpingco, Law Offices of John S. Unpingco and Associates, LLC, Sinajana, GU, Joseph C. Razzano, Teker Torres and Teker, P.C., Hagatna, GU, Martin Pascual, Michael W. Shore, Shore Chan Bragalone LLP, Dallas, TX, Kenneth E. Shore, Vance P. Freeman, Shore West Freeman, P.C., Longview, TX, for Plaintiffs.

Daniel M. Benjamin, Calvo and Clark, LLP, Tamuning, GU, Chris L. Holm, Milbank, Tweed, Hadley And McCloy LLP, Los Angeles, CA, Christopher E. Chalsen, Frank A. Bruno, Lawrence T. Kass, Michael M. Murray, Milbank, Tweed, Hadley And McCloy LLP, New York, NY, for Defendant.

Order Re: Objections to Magistrate's Order Granting Motion of Alternative Service of Process On Fujitsu Limited

TYDINGCOGATEWOOD, Chief J.

**\*1** On January 24, 2007, this matter came before the court for a hearing on Fujitsu Limited's Objections to Magistrate's Order Granting Motion of Alternative Service of Process on Fujitsu Limited ("Fujitsu").[1] Fujitsu argued that the Magistrate Judge erred when he permitted Nanya Technology Corp. ("Nanya") to effect service of process on Fujitsu via electronic mail and international mail requiring a signed receipt pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. Having considered the parties' arguments and submissions, as well as relevant caselaw and authority, the court hereby Overrules the Fujitsu's motion and issues the following decision.

Background

On September 13, 2006, the Plaintiff, Nanya filed the present action in the District Court of Guam.[2] The day after filing the complaint in Guam, Nanya's lawyer, Mr. Michael W. Shore, presented a "courtesy copy" of the complaint to Mr. Shigeru Kitano of Fujitsu during a meeting in Japan. However, there is an issue concerning why Nanya refrained from "formally serving" the complaint at that time. Nanya claims that Fujitsu asked Nanya to delay serving the complaint. See Ex Parte Motion for Alternative Process, Exhibit A, Declaration of Michael Shore ("Ex. A, Shore Decl."), ¶ 8. In contrast, Fujitsu claims that Mr. Shore assured Fujitsu representatives that Nanya would not serve the complaint so long as negotiations continued. See Declaration of Shigeru Kitano ("Kitano Decl."), ¶ 6. In any event, the parties appear to agree that no formal service of the complaint occurred.

On October 25, 2006, the parties subsequently met for another round of settlement negotiations. Ex. A, Shore Decl., ¶¶ 9-10. It was during this meeting that Fujitsu gave Nanya a copy of a complaint Fujitsu filed against Nanya in a federal district court in San Jose, California. Fujitsu Ltd. v. Nanya Technology Corp., Case No. C06-06613, United States District Court for the Northern California, San Jose Division.

After the October 25, 2006 meeting, Mr. Shore apparently attempted to get an agreement from Fujitsu's counsel to accept service of the complaint filed in Guam. Ex. A, Shore Decl., ¶¶ 10-11. Counsel in the California filed case informed Mr. Shore that he did not represent Fujitsu in the Guam case and he did not know who would represent Fujitsu until the complaint was formally served in accordance with the Hague Convention. Id.

On November 9, 2006, Nanya, by its attorneys, John S. Unpingco and Joe Razzano, moved the court pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure for an order permitting Nanya to effect service of process on defendant Fujitsu Limited ("Fujitsu") via electronic mail and international mail requiring a signed receipt. The Magistrate Judge granted the motion. See November 9, 2006 Order Docket No. 19.

On November 20, 2006, Fujitsu filed its Objections to the Magistrate's Order Granting the Motion for Alternative Service of Process on Fujitsu Limited. It is Fujitsu's objections that are now before this court.

Nanya Technology Corp. v. Fujitsu Ltd., Not Reported in F.Supp.2d (2007)

2007 WL 269087

Discussion

**\*2** Under Title 28 U.S.C. § 636(b)(1)(A), a magistrate judge may:

> hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A).

"Findings and Recommendations" are issued under 28 U.S.C. § 636(b)(1)(B) concerning matters specifically excepted under 28 U.S.C. § 636(b)(1)(A). In this instance, the Magistrate Judge ruled on the issue of whether Nanya could serve the complaint via alternative service of process. The Court finds that this issue was clearly of a pretrial nature and was not identified as a dispositive matter needing a judicial referral and a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

Under Title 28 U.S.C. § 636(b)(1)(A) a district judge may reconsider a Magistrate Judge's order on a nondispositive pretrial motion if the order was "clearly erroneous or contrary to law;" it is not subject to *de novo* determination as are proposed findings and recommendations under Title 28 U.S.C. § 636(b)(1)(B), (emphasis added). Similarly, Federal Rules of Civil Procedure 72(a) provides "[t]he district judge ... shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law ..." Fed.R.Civ.P. 72(a) (emphasis added). Under this standard of review, the Magistrate Judge's order should be affirmed unless the district court is left with the "definite and firm conviction that a mistake has been committed." *Burdick v. Comm'r,* 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court. *Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991).

Fujitsu argues that the Magistrate Judge erred when he authorized service under Federal Rule of Civil Procedure 4(f)(3) because: (a) Nanya's counsel made misrepresentations to the court concerning Fujitsu violating an agreement to continue settlement negotiations and hold off on litigation; (b) the Hague Convention does not permit service by mail by Japanese defendants; (c) the form of service disregards Japanese law; (d) the safeguards in Rule 4(f)(2)(C)(ii) were not met; and (e) the Magistrate Judge's order violated the "hierarchy" of service under Rule 4 or did not satisfy Rule 4(f)(3)'s "urgency" requirement.

As to the first point of contention, this court recognizes that there are conflicting renditions at to whether Fujitsu asked Nanya to postpone serving the complaint or whether Nanya volunteered to hold off formally serving its complaint while settlement negotiations were on-going. This court finds that it need not resolve this factual controversy, as the issue is whether the Magistrate Judge erred in ordering alternative service.

**\*3** Rule 4 of the Federal Rules of Civil Procedure governs service of process in civil suits. The procedural requirements for service of process on an individual found outside the United States and joined as a party against whom a claim has been made are set forth in subdivision (f) of Rule 4. Federal Rule of Civil Procedure 4(f) provides:

> Service Upon Individuals in a Foreign Country. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be effected in a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> > (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
> >
> > (B) as directed by the foreign authority in response to a letter of rogatory or letter of request; or
> >
> > (C) unless prohibited by the law of the foreign country, by

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Nanya Technology Corp. v. Fujitsu Ltd., Not Reported in F.Supp.2d (2007)

2007 WL 269087

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

Fed.R.Civ.P. 4(f)(emphasis added).

Fujitsu claims that since Japan is a signatory to the Hague Convention (the "Convention"), the procedures as set forth under the Convention for process of service must be followed.[3] *See* Fed.R.Civ.P. 4(f)(1). However,

[t]he Convention also provides that it does not "interfere with" other methods of serving documents. Article 10(a) of the Convention recites:

Provided the State of destination does not object, the present Convention shall not interfere with-

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.

*Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir.2004). In this instance, the question is whether the Hague Convention prohibits service by mail. Admittedly, the law is unsettled regarding whether service via postal channels is permissible against Japanese defendants under the Hague Convention. Fujitsu however, says the better view is that it is not. However, in *Brockmeyer,* the Ninth Circuit held that the meaning of "send" by mail in Article 10(a) of the Hague Convention includes "serve" by mail. The Ninth Circuit stated that its holding is consistent with the purpose of the Convention to facilitate international service of judicial documents. *Id.* at 802. The *Brockmeyer* court continued:

**\*4** The purpose and history of the Hague Convention, as well as the position of the U.S. State Department, convince us that "send" in Article 10(a) includes "serve." We therefore hold that the Convention permits-or, in the words of the Convention, does not "interfere with"-service of process by international mail, so long as the receiving country does not object.

*Id.* at 803.

Fujitsu concedes that Japan has not objected to Article 10(a) and that there is a split of authority on the issue. *See* Fujitsu's

Memorandum, Docket No. 44, at 7. Other courts considering the issue have found that service on a Japanese defendant by mail is proper under the Convention:

As evidenced by the split among the judges of this Court, there is no obviously right or wrong answer to the question. After careful review, this Court adopts the view that Article 10 does permit service of process by mail. In doing so, the Court follows the United States Supreme Court's directive that '[t]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties.'

*Schiffer v. Mazda Motor Corp.* 192 F.R.D. 335, 337 -338 (N.D.Ga.,2000) (citations omitted).

According to the Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1983) ("Handbook"), 'Japan has not declared that it objects to service through postal channels.' Handbook, at 112. Accordingly, under Article 10(a), service on KHI, a Japanese corporation, was effective by the direct mail procedure....

*Weight v. Kawasaki Heavy Industries, Ltd.,* 597 F.Supp. 1082, 1085 (D.C.Va.,1984).

In light of the fact that the Convention "purports to deal with the subject of service abroad .... [t]he reference to 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service."

*Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456, 463 (E.D.N.Y.,1986) (citations omitted).

Even after a number of courts have upheld service by mail on Japanese parties, Japan still has apparently not objected to Article 10(a). *Schiffer,* 192 F.R.D. at 338 ("Numerous United States courts have upheld service of process on Japanese defendants by direct mail, yet the Japanese government has made no efforts to amend its objections to the Convention so as to preclude service by mail pursuant to Article 10(a)").

Fujitsu next argues that this court should consider Japanese laws of service. Apparently, Japanese plaintiffs are not able to effect service themselves by mail under their civil law. With regard to service through a special mailing process, persons engaged in the mailing business known as *tokubetsu sotatsu*

Nanya Technology Corp. v. Fujitsu Ltd., Not Reported in F.Supp.2d (2007)

2007 WL 269087

are deemed to be the official authorized to effecting such service. *See* Fujitsu's Memorandum, Docket No. 44, at 9. There are certain procedures and reporting requirements that must be followed. *Id*. While there may be strict and formal procedures for effectuating service in Japan, it is of little consequence to this court's determination. As noted, the only concern for this court is whether the Magistrate Judge erred by allowing service by mail. The Ninth Circuit has clearly held that such service is not prohibited by the Hague Convention. *Brockmeyer,* 383 F.3d at 802.

**\*5** Fujitsu argues that the court should at least require the safeguards as provided for in Fed.R.Civ.P. 4(f)(2)(C)(ii). That rule provides, in relevant part:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

...

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

...

(C) unless prohibited by the law of the foreign country, by

...

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served[.]

Fed.R.Civ.P. 4(f)(2)(C)(ii).

Again, however, under the circumstances there is no requirement that the method of service under Fed.R.Civ.P. 4(f)(2)(C)(ii) be used. Within the strictures of Rule 4(f) there are three separate methods through which service of process "may be effected in a place not within any judicial district of the United States." In the opinion of *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007, 1014-15 (9th Cir.2002), the Ninth Circuit Court of Appeals held that each of Rule 4(f)'s three methods for international service of process is equivalent to one another. That is, "Rule 4(f) does not denote any hierarchy or preference of one method of service over another." *Id.* at 1015. Further, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Id.* Thus, "court-directed service under Rule

4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* Fujitsu argued that the *Rio* court's holding applies only to situations where the recipient party does not live in a member country of the Hague Convention. The *Rio* Court however, does not make that kind of distinction nor limit its holding to such circumstances.

Although Fujitsu claims that Rule 4(f)(3) can only be availed upon in "urgent circumstances" there is no such indication upon reading the caselaw. Nevertheless, Nanya alleged circumstances suggesting that it was urgently trying to effectuate service to prevent Fujitsu's alleged unjust gamesmanship and forum shopping by filing a duplicative action in California. But again, the Ninth Circuit court in *Rio* stated that "we are left with the inevitable conclusion that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' ' *Rio Properties, Inc.,* 284 F.3d at 1015 (9th Cir.2002).

We should not lose sight of what service of process is about, it is about giving a party notice of the pendency of an action and the opportunity to respond. *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007, 1017 (9th Cir.2002). All that is required under Rule 4(f)(3) is that service be "directed by the court" and that the means of service "not be prohibited by international agreement [the Hague Convention]." Fed.R.Civ.P. 4(f)(3). There can be little question that the means by which the Magistrate Judge ordered Nanya to provide service was sufficient enough to give Fujitsu notice and an opportunity to respond. The Magistrate Judge's Order was neither clearly erroneous nor his legal conclusions contrary to law. Accordingly, Fujitsu's Objections are overruled.

Conclusion

**\*6** Under the circumstances, the court finds that the Magistrate Judge's Order Granting Motion of Alternative Service of Process on Fujitsu Limited was proper. This court finds no basis to sustain Fujitsu's objections as the order was neither clearly erroneous nor the legal conclusions therein contrary to law. Accordingly, the court Hereby Overrules Fujitsu's objections.

So Ordered this 25*th* day of January, 2007.

Nanya Technology Corp. v. Fujitsu Ltd., Not Reported in F.Supp.2d (2007)

2007 WL 269087

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 269087

Footnotes

1   *See* Docket No. 19.

2   Apparently when Nanya filed its complaint the parties were in the midst of longstanding settlement discussions regarding the use of various patents.

3   The Hague Convention, ratified by the United States in 1965, regularized and liberalized service of process in international civil suits. The primary means by which service is accomplished under the Convention is through a receiving country's "Central Authority." The Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. *See* Hague Convention, art. 2. The receiving country can impose certain requirements with respect to those documents (for example, that they be translated into the language of that country). *See id.,* art. 5. If the documents comply with applicable requirements, the Convention affirmatively requires the Central Authority to effect service in its country. *See id.,* arts. 4 & 5.

   *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir.2004).

---

**End of Document**                                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1140639
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

WILLIAMS-SONOMA INC., Plaintiff,

v.

FRIENDFINDER INC., et al., Defendants.

No. C 06-06572 JSW.
|
April 17, 2007.

**Attorneys and Law Firms**

Gregory S. Gilchrist, Timothy R. Cahn, Townsend and Townsend and Crew LLP, San Francisco, CA, for Plaintiff.

Joseph E. Addiego, Davis Wright Tremaine LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART, DENYING IN PART, AND DENYING WITHOUT PREJUDICE IN PART PLAINTIFF'S MOTION TO AUTHORIZE ELECTRONIC MAIL SERVICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

JEFFREY S. WHITE, United States District Judge.

 *1  This matter comes before the Court upon consideration of the motion to authorize electronic mail service under Federal Rule of Civil Procedure 4(f)(3) filed by Plaintiff Williams-Sonoma Inc.'s ("WSI"). None of the defendants have filed briefs in opposition to WSI's motion. On April 4, 2007, the Court requested additional briefing from WSI, which was filed on April 13, 2007. Having considered WSI's pleadings, the lack of opposition, relevant legal authority, and the record in this case, the Court finds the matter suitable for disposition without oral argument and HEREBY VACATES the hearing set for April 20, 2007. The case management conference shall remain on calendar on April 20, 2007 at 1:30 p.m.

**BACKGROUND**

On October 20, 2006, WSI filed this action alleging, *inter alia,* the named defendants for trademark infringement. WSI

filed its Amended Complaint on January 5, 2007. In its Amended Complaint, WSI seeks relief to prevent the named defendants from using variants of its POTTERY BARN family of marks in source code and metatags, which are used to direct internet users to sexually explicit websites. WSI alleges that the named defendants, many of whom are foreign, are the registered owners of these websites. WSI attests that it has attempted to effect service on the named defendants but has been unable to do so, in some instances because physical addresses are incorrect or because the defendants have refused to accept service. (*See* Declaration of Timothy Cahn, ¶¶ 3-11.) WSI maintains, however, that with the exception of one defendant, it has been able to communicate effectively with defendants via electronic mail. Accordingly, WSI moves the Court to permit it to effect service on defendants via electronic mail or by international mail.

**ANALYSIS**

"Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals." *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007, 1014 (9th Cir.2002). Rule 4(f), in turn, sets forth the manner in which a plaintiff may effect service on an individual not within any judicial district of the United States. Rule 4(f)(3) provides that service may be effected "by other means not prohibited by international agreement as directed by the court."

Under the plain language of Rule 4(f)(3), a plaintiff must show that the "other means" is not prohibited by international agreement and must obtain a court order to effectuate service in the desired fashion. *See Rio Properties,* 284 F.3d at 1014; *Nanya Techn. Corp. v. Fujitsu Ltd.,* 2007 U.S. Dist. LEXIS 5754 at *17 (D.Guam. Jan. 2, 2007) (granting motion to effect service by email and international mail on Japanese defendant). In addition, the method of service authorized by the Court "must also comport with constitutional notions of due process." *Rio Properties,* 284 F.3d at 1016. In *Rio Properties,* the Ninth Circuit also stated that as long as service under Rule 4(f)(3) is "court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.* at 1014.

 *2  Although, the Ninth Circuit also has stated a plaintiff must obtain court approval *before* attempting to effect service Rule 4(f)(3) before service will be considered effective, a

plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2). *See Brockmeyer v. May,* 383 F.3d 798, 806 (9th Cir.2004) (finding plaintiff did not effect service properly where they failed to obtain court approval prior to serving via mail); *Rio Properties,* 284 F.3d at 1016.

In this case, the Court concludes that the circumstances warrant alternative service. WSI has presented evidence that physical addresses for a number of the named defendants cannot be located or that defendants have refused to accept service. WSI also has established that the email accounts they have for defendants have been effective means of communicating with the defendants, which would serve the purposes of ensuring the defendants receive adequate notice of this action and an opportunity to be heard. *See Rio Properties,* 284 F.3d at 1016-17 (finding that service via electronic mail was "method most likely to reach" defendant and concluding district court did not abuse discretion in authorizing service via email).

According to the information WSI has gathered, the named defendants are located in the Ukraine, the Czech Republic, Israel, Switzerland, the Philippines, Norway, Canada, India and England.[1] With the exception of India and the Philippines, these countries are signatories to the Hague Convention. (*See* Cahn Decl. ¶ 12, Ex. A.) The Court concludes that WSI has demonstrated that service via email is not prohibited by an international agreement. In *Rio Properties,* the Ninth Circuit stated that "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Properties,* 284 F.3d at 1014. Plaintiff's supplemental briefing did not uncover any express prohibitions against email service. Accordingly, WSI's motion is GRANTED to the extent it seeks to effectuate service via email.

However, with respect to WSI's request to permit service by international mail, the Czech Republic, Norway, Switzerland and the Ukraine do object to service via postal channels. As such, to the extent WSI seeks authorization to effect service on defendants located in those countries by mail, WSI's motion is DENIED.

Accordingly, WSI's motion is GRANTED IN PART, DENIED IN PART, AND DENIED WITHOUT PREJUDICE IN PART.

IT IS HEREBY ORDERED THAT WSI IS GRANTED LEAVE TO serve the amended complaint and summons on the following defendants in the manner specified herein:

1. Defendants Unimaster Ltd. and Andrej Korchev at sysgen@porn-host.org;

2. Defendants YetisCash, Ales Lexico, and Vladimir Techl at lexico @yetisagency.com and ladis.oz@centrum.cz;

3. Defendant David Greenwald at David.Greenwald@fatbares.com;

**\*3** 4. Defendant Sweethelda Ballesteros via international registered mail to "Socsargen County Hospital, Bula-lagao Rd., Larrdaza St., General Santos, General Santos, 9500, Philippines;

5. Defendant Stein Tvedt at pornserve@hotmail.com;

6. Defendant Eddie Morgan at eddiemorgan@hotmail.com and via international registered mail to Post Office Box 956, Goosebay AOP 1CO, Canada; and

7. Defendant On Line Marketing Service at webmaster @onlinemarketingservices.biz and via international registered mail to 196 High Road, Wood Green, London N22 8HH, United Kingdom; and

8. Defendant Umesh Chandra Rastogi at jekkippost@yahoo.com.

The Court will also grant WSI leave to serve Defendant Andre Schneider via email, but it must provide the Court with a proposed Order setting forth Defendant's email address by no later than April 27, 2007.

It is FURTHER ORDERED that the Court is not ratifying actions already taken by WSI. WSI must re-serve the amended complaint and summons on the defendants identified above.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1140639

Footnotes

1 WSI attests that with respect to defendant Privacy Protect, Inc ., which has a physical address located at 14781 Memorial Drive, Houston, Texas, that defendant claims to be a Belize company operating out of India. (*Id.* ¶ 7.) It is not clear to the Court whether WSI is asking for Court relief at this time as to this defendant, and to that extent the Court DENIES WITHOUT PREJUDICE WSI's motion. If additional information is gathered, WSI may renew the motion, so that the Court may determine if electronic service or service by another method would be reasonably calculated to apprise this defendant of the pendency of this action.

**End of Document**              © 2021 Thomson Reuters. No claim to original U.S. Government Works.