IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Trademark Owner Identified in Exhibit 1, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:24-cv-00207 |
| v. ) | |
| ) | Dist. Judge Nancy L. Maldonado |
| The Partnerships and Unincorporated ) | |
| Associations Identified on Schedule "A", ) | Mag. Judge Sunil R. Harjani |
| ) | |
| Defendants. ) | |

**Plaintiff's Memorandum in Support of Joinder Under Rule 20**

Plaintiff presents this memorandum in support of Plaintiff's position that joinder is proper.

**Introduction**

Plaintiff faces a "swarm of attack" on Plaintiff's trademark rights. Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A", 334 F.R.D. 511, 517 (N.D. Ill. 2020). Plaintiff filed the instant lawsuit in order to combat the flagrant and excessive infringement of Plaintiff's trademark by numerous cookie-cutter storefronts operating in ecommerce marketplaces. Plaintiff has pleaded sufficient facts and evidence demonstrating that the Defendants are acting in concert, colluding, and/or cooperating with one another to operate numerous ecommerce marketplace accounts to avoid detection and maximize their wrongfully gained profits. The stores listed in the Schedule A were intentionally designed to omit any cogent contact information, yet they all commonly use the same templates, designs, photos, and product descriptions for their ecommerce accounts. This collective, homogenous strategy is intended to avoid identification and make enforcement of Plaintiff's intellectual property rights as pragmatically difficult as possible.

Ecommerce infringement is uniquely problematic and Rule 20 joinder requirements are intended to be flexible to accommodate situations such as these. Ecommerce intellectual property infringement costs merchants in the United States nearly $41 billion. [Dkt. 1 at ¶ 30]. United States Customs and

Border Patrol have reported that for Fiscal Year 2019, 90% of all intellectual property seizures are small express shipments with roughly 85% coming from mainland China, Hong Kong, and Singapore. [Dkt. 1 at ¶ 31]. Footwear and sporting goods, specifically, represented 17% of all seized products and the value of seized goods increased 11% in 2019 to more than $1.5 billion. Id. Plaintiff - and many other intellectual property owners - are faced with an endless task of enforcing their rights against hundreds of new infringing ecommerce sellers which spawn daily online.

At this early stage of the litigation, joinder of the Schedule A Defendants is proper in order to allow Plaintiff any fair chance at seeking relief for the gross infringement of Plaintiff's intellectual property rights. Severance, in contrast, would ignore the characteristic "mass" harm that afflicts Plaintiff and similarly situated intellectual property rightsholders. Bose, 334 F.R.D. at 517.

**I.    Argument**

   **a.  Legal Standard for Joinder**

The Seventh Circuit has instructed that the purpose of a liberal Rule 20(a) joinder requirement "is to enable economies in litigation." Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000). This rule is intentionally designed to allow flexibility so that the Court is empowered to allow effective trial management. See, In re EMC Corp., 677 F.3d 1351, 1358 (Fed. Cir. 2012), *citing*, 7 Charles Alan Wright et al., Federal Practice and Procedures § 1653 (3d ed. 2001).

In regard to Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le]…standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." In re EMC Corp., 677 F.3d at 1358. The Seventh Circuit has not fashioned a definitive standard for determining what constitutes a single transaction or occurrence. See, Bailey v. N. Trust Co., 196 F.R.D. 513, 515 (N.D. Ill. 2000) (explaining that "no hard and fast rules have been established" in this context). Similarly, the phrase

"transaction or occurrence" is not defined in Rule 20(a); however, courts have looked to the similar "transaction or occurrence" test for compulsory counterclaims in Rule 13(a). Mosley v. General Motors, 497 F.2d 1330, 1333 (8th Cir. 1974); PTG Nev., LLC v. Doe, 2016 WL 3521941, at *3 (N.D. Ill. June 28, 2016). The Supreme Court has noted that, for purposes of Rule 13(a), "[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Moore v. N.Y. Exch., 270 U.S. 593, 610 (1926);); *see also*, Burlington N.R. Co. v. Strong, 907 F.2d 707, 711 (7th Cir. 1990) (applying "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a)). This Court maintains flexibility and "considerable discretion" to determine that Plaintiff has plausibly alleged such a relationship. UWM Student Ass'n v. Lovell, 888 F.3d 854, 863 (7th Cir. 2018); Lozada v. City of Chicago, 2010 WL 3487952 (N.D. Ill. Aug. 30, 2010). The Northern District of Illinois has considered factors such as whether conduct at issue occurred during the same time period, involved similar individuals, or involved similar conduct. Id., at *2 (emphasis added).

Absolute identity of all alleged events is unnecessary for joinder to be proper. For example, other Circuits apply the "logical relationship test" to interpret the "same transaction or occurrence" standard in Rule 20(a). *See*, Mosley v. Gen. Motors Corp., 497 F.2d at 1333 (8th Cir. 1974) ("the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *see also*, Alexander v. Fulton Cnty., 207 F.3d 1303, 1323 (11th Cir. 2000). Rule 20 similarly does not define "occurrence" and courts have generally not considered the meaning of "occurrence" apart from the meaning of "transaction." Bose, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive…be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." Id. An "occurrence" has been defined as something that simply happens or appears and is not necessarily the product of joint or coordinated action. Id. *See also*, Oakley, Inc. v. P'ships &

Unincorporated Ass'ns Identified on Schedule "A", No. 1:20-cv-05972 Dkt. 27 (N.D. Ill. Nov. 9, 2020) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences"). Rule 20 allows a plaintiff to join in a single case the defendants who participate in unlawful occurrences. Fed. R. Civ. P. 20; Bose, 334 F.R.D. at 517; *see also*, In re EMC Corp., 677 F.3d at 1357 ("the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'") (emphasis added); Oakley, No. 1:20-cv-05972 (Dkt. 27) ("although Plaintiff has not sufficiently demonstrated that the asserted claims arise out of the same transaction or series of transactions, Plaintiff has sufficiently demonstrated that they arise out of the same occurrence or series of occurrences. Therefore, joinder of the 'Schedule A' Defendants is proper at this preliminary stage.").

    b. **Plaintiff's Complaint pleads sufficient facts establishing joinder.**

"In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations of the plaintiff's complaint as true." Desai v. ADT Sec. Services, Inc., 2011 WL 2837435 at *3 (N.D. Ill. July 18, 2011), *citing*, Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). The Court should construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008); Bell At. Corp v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff's Complaint provides sufficient facts to provide defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); Tamayo, 526 F.3d at 1081.

Plaintiff has presented the Court with the necessary information. The Complaint details how ecommerce platforms are ill equipped, if at all, to verify the identity of third-party sellers and police the authenticity of the products they are selling. [Dkt. 1 at ¶¶ 34–38]. Many of the Defendant sellers are using the same key words, product imagery, and same incorrect grammar and misspellings in their product descriptions. [Dkt. 1 at ¶ 42]. The Complaint further details how every single Defendant storefront

utilizes the same or similar images to design their storefronts from a common template. [Dkt. 1 at ¶ 42]; [*see also*, Dkt. 13, Ex. 1–5]. The most plausible explanation for Defendants' collective actions is either they are operated by the same entity or entities, they are working in active concert, or they are obtaining these images and products from the same common source. [Dkt. 1, ¶ 42, Dkt. 13-1–13-8]. The seller Defendants' infringing activity in the aggregate establishes the harm that Plaintiff now seeks relief before the Court. *See*, Bose, 334 F.R.D. at 516; Bala Bangles, Inc. v. The Entities and Individuals Identified in Annex A, No. 21-cv-05051 Dkt. 42 (N.D. Ill. Nov. 17, 2021) ("Plaintiff has offered evidence, supported by affidavit, indicating that the sellers are all using the same or similar marketing strategies and the same of similar tactics to avoid enforcement efforts; their online 'stores' often share unique identifiers; and all but two defendants are selling the same accused product obtained from a single common supplier. For present purposes, this evidence satisfies the 'series of transactions or occurrences' requirement of section 299(a)(1), as well as Fed. R. Civ. P. 20(a)(2)."). The seller Defendants' infringing activity in the aggregate establishes the harm for which Plaintiff now seeks relief before the Court. *See*, Bose, 334 F.R.D. at 516.

Defendants' infringement of Plaintiff's intellectual property in this collective manner creates the "occurrence of mass harm" necessary to create a logical relationship establishing proper joinder. *See*, Id. ("Rule 20's inclusion of the term 'occurrence' should allow plaintiffs to join in a single case the defendants who participate in such unlawful occurrences, despite the lack of a 'transactional link.' The kind of harmful occurrences the internet enables - including mass foreign counterfeiting - were inconceivable when Rule 20 was drafted. But the Rule's inclusion of the term 'occurrence' suggests that joinder is appropriate in cases alleging harm that is not strictly 'transactional.'"). It is unnecessary for Plaintiff to plead an explicit transactional link between the Schedule A Defendants in order to establish joinder. Id. Rather, Plaintiff has adequately demonstrated that the Defendants are operating collectively to "take advantage of a set of circumstances - the anonymity and mass reach afforded by the internet and the cover afforded by international borders - to violate [plaintiff's intellectual property] with

impunity." Id. Accordingly, "it is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." Id. Bose correctly noted the reality of the harm intellectual property owners face with foreign ecommerce-based infringement:

> [E]very individual counterfeiter can be said to cause a distinct injury. But that is not Bose's reality. Bose does not perceive any one counterfeiter to be the problem. Each injury by itself is relatively inconsequential to Bose. Rather, it is the injuries in the aggregate - the swarm - that is harmful and from which Bose seeks shelter. From Bose's perspective, filing individual causes of action against each counterfeiter ignores the form of harm it faces. Seeking relief against each member of the swarm one by one defies common sense, because it is the swarm - the fact that all Defendants are attacking at once - that is the defining aspect of the harm from which Bose seeks relief. Joinder of all defendants who are part of the swarm attacking Bose's trademarks flows easily from conceptualizing the swarm as the relevant Rule 20 "occurrence."

Id. at 517. Plaintiff faces an identical situation concerning Plaintiff's trademark. Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." Id. at 514. As a result, it is almost impossible to link all or clusters of seller aliases together using arbitrary commonalities. Plaintiff is not required to demonstrate that Defendants are commonly coordinated from a singular or common source at the pleading stage. Id. at 517. "It is reasonable for a plaintiff who is attacked by a swarm…to come to the Court for shelter against that conduct." Id. Plaintiff's Complaint therefore alleges sufficient facts to find that Defendants were properly joined. Tamayo, 526 F.3d at 1081.

    c. **This Court Should Permit Joinder as Proper at this Stage of Litigation.**

        i. **Bose provides a logical rationale why joinder is proper under Rule 20.**

Bose represents a majority approach for establishing joinder in cases involving intellectual property infringement by foreign defendants among ecommerce marketplaces. Id.; *See also*, WowWee Group Ltd. v. Merily et al., 2019 WL 1375470, at *5-6 (S.D.N.Y. March 27, 2019); Spy Optics Inc. v. Individuals, P'ships and Unincorporated Ass'ns Identified on Schedule A, 2017 WL 10592133, at *1 (C.D. Cal. November 27, 2017); CCA and B, LLC v. Babeeni Vietnam Company Ltd., 2019 WL 7491499, at *3 (N.D. Ga. August 30, 2019); Louis Vuitton Malletier, S.A. v. 88bestcase, 2016 WL

8679084, at *4 (S.D. Fla. July 13, 2016). A narrower position was recently introduced in Estée Lauder Cosmetics Ltd. v. P'ships and Unincorporated Ass'ns Identified on Schedule A, 334 F.R.D. 182, 189 (N.D. Ill. 2020) (Chang, J.) (hereinafter Estée Lauder I). In Estée Lauder I, joinder of multiple ecommerce seller defendants was found improper, arguing that "one defendant's alleged infringement does not 'arise out of the same transaction, occurrence, or series of transactions of occurrences' as another defendant's unrelated infringement. Fed. R. Civ. P. 20(a)(2)(A). When defendants are not connected to one another, there is no evidentiary overlap in proving what one defendant did and what another did." Id., 334 F.R.D. at 187. The Court's argument in favor of its narrower approach in Estée Lauder I was that the plaintiff's allegations that defendants were acting in active concert with one another was too conclusory, with insufficient factual support, to establish joinder. Id. at 188. This narrow approach does not permit joinder of any defendants. Rather, it requires that a plaintiff show that multiple e commerce store seller aliases are operated by the same individual or entity, i.e., a single defendant. Critically, however, the information required to meet such a stringent requirement is typically not available prior to court-ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

While this Court is free to interpret the scope of Rule 20 as the Court deems proper to promote economies of litigation, the rationale in Bose provides the most fair and equitable consideration in finding proper joinder for both Plaintiff and Defendants, particularly in light of the facts - perhaps all that may be adduced prior to detailed discovery - concerning the Defendants' very-apparent interrelatedness. In re EMC Corp., 677 F.3d at 1358.

The arguments articulated in Bose detail the reality that foreign sellers on internet marketplaces produce a unique harm to intellectual property owners that necessitate Rule 20's flexibility. Id., 334 F.R.D. at 517. First, Bose states that Rule 20 allows defendants involved in the same "occurrence" to be joined: defining "occurrence" as "something that simply 'happens' or 'appears.' Unlike a 'transaction,' an

'occurrence' is not necessarily the product of joint or coordinated action." Id., 334 F.R.D. at 516. Bose continues that:

> Rule 20's inclusion of the term "occurrence" should allow plaintiffs to join in a single case the defendants who participate in such unlawful occurrences, despite the lack of a "transactional link." The kind of harmful occurrences the internet enables - including mass foreign counterfeiting - were inconceivable when Rule 20 was drafted. But the Rule's inclusion of the term "occurrence" suggests that joinder is appropriate in cases alleging harm that is not strictly "transactional."

Id. Second, allowing joinder of defendants is necessary in these cases because it is the only means by which the Court can address the injury the plaintiff intellectual property owner is suffering. Bose, 334 F.R.D. at 517 ("Seeking relief against each member of the swarm one by one defies common sense, because it is the swarm - the fact that all Defendants are attacking at once - that is the defining aspect of the harm from which Bose seeks relief."). Finally, and most importantly, this flexible interpretation of Rule 20's joinder provision is required because counterfeit sellers on ecommerce platforms benefit from their increased anonymity and numbers. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966) (arguing that Rule 20 should be construed broadly to promote fairness); Bose, 334 F.R.D. at 516 (arguing that online defendants' anonymity and evasiveness was never contemplated when Rule 20 was drafted and therefore, Rule 20, should be construed fairly to take this fact into consideration).

### ii. Joinder of Defendants will not render Rule 20 toothless.

If this Court adopts the rationale of Bose, Fed. R. Civ. P. 20 will remain an effective tool for the Court to restrict joinder. Id. Estée Lauder I is primarily concerned with the proliferation of plaintiffs' ability to join any number of defendants with only minimal connection to one another, which is anathema to the purpose of Rule 20. Estée Lauder I, 334 F.R.D. at 187, *citing*, In re EMC Corp, 677 F.3d at 1358. Judge Lee, in a subsequent opinion, shared this concern, arguing that the interpretation presented in Bose "would [ ] render toothless the limits contained in Rule 20(a)(2), gutting the demand of a shared 'transaction or occurrence' and replacing it with a more lenient standard…". Estée Lauder et al., v. The Partnerships et al., No. 20-cv-00845 (Dkt. 40) (N.D. Ill. June 22, 2020) (Lee, J.) (hereinafter Estée Lauder

II). Plaintiff assures the Court that Bose's definition of "occurrences" and its rationale establishing joinder of ecommerce counterfeit seller defendants is not "gutting" the standards imposed by Rule 20(a)(2). Bose, 334 F.R.D. at 517; Estée Lauder II, at *5-6.

Estée Lauder II, respectfully, does not appear to have fairly considered the unique aspects of ecommerce sellers' actions, which are atypical in most infringement litigation: sellers remain anonymous, reside in foreign jurisdictions, and immediately close stores and move assets at the first sign of detection by any law enforcement entity. Estée Lauder II, at *5-6; [Dkt. 1 at ¶ 43]. The cases upon which Estée Lauder II relies, such as Slep-Tone and Eclipse, involved defendants that were readily identifiable to the plaintiffs, and the plaintiffs had reasonable means to gather additional information prior to drafting their complaints. Slep-Tone Entm't Corp. v. Roberto, 2013 WL 5748896 at *3 (N.D. Ill. October 22, 2013); Eclipse Mfg. Co. v. M and M Rental Center, Inc., 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007). This luxury is not available to Plaintiff in this case. Unlike the current case, there were no allegations in Slep-Tone or Eclipse. that the defendants were unknown and working in a similar manner and during the same time period to sell Infringing Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's trademark at once. *See*, Bose., 334 F.R.D. at 516. Further, both Estée Lauder I and Estée Lauder II construed facts in the light most favorable to the defendants by downplaying other commonalities between seller aliases as merely coincidental. *See, e.g.*, Estée Lauder I, 334 F.R.D. 188-89 ("[i]t is just as likely that each online retailer decided to avoid being shut down yet again by removing the trademarks"); Estée Lauder II at *9 ("defendants with nearly identical product descriptions may in fact share no ties, with each simply copying the same description from elsewhere").

Bose's rationale permitting joinder is narrowly tailored and contains a "limiting principle" that Estée Lauder II argued was necessary to preserve Rule 20's standard of enforcement. Bose, 334 F.R.D. at 517, Estée Lauder II, at *6. Namely, Bose only permitted joinder based on the reality that intellectual property owners combating online ecommerce infringement lack the research and investigation tools

available to traditional litigants with domestic defendants. Id. For example, Bose's liberal interpretation of Rule 20 would logically not be available to future plaintiffs which are seeking to enforce their rights against infringers who are known to be located domestically in the United States. A plaintiff's burden of proof at the pleadings stage should fairly reflect the research and tools available to them to establish joinder of defendants. *See*, *e.g.*, United Mine Workers of Am., 383 U.S. at 724 (arguing that Rule 20 should entertain "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Therefore, this Court should recognize that the rationale of Bose is not changing the traditional breadth of Rule 20, but rather is offering a narrowly tailored accommodation to the reality of intellectual property infringement by generally foreign and anonymous ecommerce sellers.

Plaintiff's Complaint plausibly alleges that Defendants are similarly related and are acting in concert with one another in a similar manner and during the same time period to sell Infringing Products, as part of the same "occurrence" of mass harm. This is the very "swarm" referenced in Bose. 334 F.R.D. at 516. Each Defendant seller utilizes similar photos to advertise the infringing products, similar graphic design, and/or similar efforts to preserve anonymity. [Dkt. 1 at ¶ 42]. This establishes a sufficient relationship supporting joinder. Joinder at this stage is in line with a plethora of factually similar cases, in this and other districts,[1] combatting ecommerce intellectual property infringement, which cases strongly encourage "entertaining the broadest possible scope of action consistent with fairness to the parties." *See*, United Mine Workers of Am., 383 U.S. at 724 (1966); *see also e.g.*, Bose, 334 F.R.D. at 517 (finding proper joinder of several ecommerce stores selling counterfeit Bose products). Therefore,

---

[1] Hundreds (if not thousands) of similar cases against multiple ecommerce store seller aliases have been filed across the country for nearly a decade. *See*, *e.g.*, Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al., No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al., No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); Louis Vuitton Malletier v. aaalvshop.com, et al., No. 19- cv-61986 (S.D. Fla. Nov. 21, 2019); Volvo Car Corporation, et al. v. The Unincorporated Ass'ns Identified in Schedule A, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); CCA and B, LLC v. Douyong toy, et al., No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et al., No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018)

joinder of the Schedule A Defendants is proper at this preliminary stage. Weifang Tengyi Jewelry Trading Co. Ltd v. P'ships, et al., No. 18-cv-04651 (N.D. Ill. July 5, 2018) (Dkt. No. 150) ("[Plaintiff's] claims against [Defendants] rest in substantial part on the same legal and factual grounds as [Plaintiff's] claims against the other defendants, including that [Defendants] were involved in a counterfeiting network with the other defendants); Too Faced Cosmetics, LLC v. Operators of KTKT Store, et al., No. 19-cv-07762 Dkts. 22, 27, 30 (N.D. Ill. Feb. 12, 2020) (Lefkow, J.) (finding joinder appropriate in factually similar case after supplemental briefing); *see also* Gold's Gym Licensing LLC v. Operators of dropshipping fast ship Store, et al., No. 19-cv-07446 Dkts. 32, 38, 43 (N.D. Ill. Jan.15, 2020) (Lefkow, J.) (same); Otter Products, LLC, et al. v. James Chen, et al., No. 16-cv-06807 Dkt. 32 (N.D. Ill. July 12, 2016) (Shadur, J.) (same).

### iii. Joinder is sufficiently fair and equitable to all Schedule A Defendants.

This Court should find joinder proper in this case as it is the best avenue to promote judicial economy - a critical consideration of the Court's discretion when interpreting Fed. R. Civ. P. 20. *See also*, First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252 (N.D. Ill. 2011); Golden Goose Deluxe Brand v. Aierbushe, 2019 WL 2162715, at *4 (S.D.N.Y. May 16, 2019) (arguing that although joinder may not be fully satisfied under Rule 20, the Court maintains considerable discretion, and judicial economy is favored by maintaining joinder of the ecommerce seller defendants in order to expedite litigation). Joinder at this stage will allow the most convenient, inexpensive, and time-efficient avenue to a resolution of this matter for both Plaintiff, Defendants, and the Court. The practical alternative for a Plaintiff would be to file identical individual cases against each and all of the Defendants, and then inevitably relate them as facts are elicited through discovery, resulting in tremendous judicial waste. As noted in Bose, "[r]equiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the

Lanham Act." 334 F.R.D. at 517, n.6. Intellectual property owners asserting similar infringement cases against multiple online counterfeiters have been repeatedly successful in this district combatting ecommerce infringement. *See*, Luxottica USA LLC, v. P'ships, et al., 2015 WL 3818622, *1 (N.D. Ill. June 18, 2015) (plaintiff brought infringement suit against numerous online counterfeit sellers, the court notes how the majority of defendants received default judgements entered against them or were voluntarily dismissed); *see also* Tory Burch LLC v. P'ships, et al., 2013 WL 1283824 at *9 (N.D. Ill. March 27, 2013) (arguing that the granting of an injunction against hundreds of online counterfeiters is both in the plaintiff's interest and public interest to protect consumers against fraud and deceit); Coach, Inc. v. P'ships, et al., 2013 WL 5477573, at *3 (N.D. Ill. October 1, 2013) (same).

Severance at this stage in the litigation will unduly prejudice Plaintiff in Plaintiff's effort to seek relief for the vast amount of infringement plaguing Plaintiff's business by online ecommerce stores. Similar cases involving anonymous ecommerce seller defendants have found joinder at this stage increasingly effective. *See*, Oakley, Inc., 20-cv-05972, (N.D. Ill. November 9, 2020) (Dkt. 27) ("no Defendants are prejudiced by permitting joinder at this juncture."), *citing*, Bose, 334 F.R.D. 511, 517 (N.D. Ill. 2020); *See also*, First Time Videos, 276 F.R.D. at 252 (finding that joinder of several defendants accused of nearly identical forms of copyright infringement was proper at the pleading stage); Entm't One UK Ltd. v. 2012shiliang, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019) (indicating that of 400 accused online defendants selling counterfeit products the large majority received a default judgement); WowWee Group Ltd. v. Merily et al., 2019 WL 1375470, at *5-6 (S.D.N.Y. March 27 2019); CCA and B, 2019 WL 7491499, at *3 (N.D. Ga. August 30, 2019) (finding proper joinder of approximately 50 online defendant sellers for allegedly selling counterfeit goods); Louis Vuitton, 2016 WL 8679084 at *4 (S.D. Fla. July 13, 2016) (issuing a temporary injunction against 77 online defendant sellers for allegedly selling counterfeit goods); Call of the Wild Movie, LLC v. Does 1-1, 062, 770 F. Supp. 2d 332, 342 (D.D.C. March 22,

2011) (finding proper joinder on the basis that it promotes judicial economy at the early stages of litigation when anonymous infringing defendants cannot be properly identified).

Counterfeit and otherwise-infringing products remain rampant in ecommerce and IP owners - like Plaintiff - will be crippled in their ability to enforce their rights if joinder is not, at least initially, allowed. It is unclear how any Defendant would be prejudiced by joinder at this time - there is no argument that an isolated, individual defendant would not be subject to the same jurisdictional treatment, and this Court has observed that there are even benefits to being joined. *See*, First Time Videos, 276 F.R.D. at 253 (arguing that joinder benefits defendants by being able to view one another's defenses as to liability, yet they will still be considered individually for any ruling on the merits of plaintiff's claims).

### iv. Joinder will not create an undue burden for the Court.

Estée Lauder I, and more recently H-D U.S.A. v. The Partnerships et al., echo the concern that joinder in these ecommerce cases would create "a burden on courts since courts must evaluate the evidence submitted in support of liability and, eventually, apportion damages among the parties." H-D U.S.A. v. P'ships et al., 2021 WL 780486 at *3 (N.D. Ill. March 1, 2021). This concern ignores the reality that the vast majority of defendants named in these cases will result in default judgements. *See e.g.*, Entm't One, 384 F. Supp. 3d at 947 (indicating how most defendants in these online infringement cases result in default judgements). However, allegations in the complaint are accepted as true if a defendant defaults, so there would not be any evidence beyond plaintiff's allegations to evaluate with respect to liability. U.S. v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989). Further, regarding a damages award, such a concern is not applicable in this case because Plaintiff will likely be seeking a profits award of the greater of $250 or the amount restrained in a linked financial account for each Seller Alias, pursuant to 35 U.S.C. § 289.

H-D U.S.A. continues that "the growing trend of combining hundreds of alleged trademark infringers under one case caption yields an enormous financial benefit to plaintiffs at the Court's expense, meaning the taxpayers ultimately miss out." Id., at *3. The "enormous financial benefit" H-D U.S.A.

refers to is the costs plaintiffs would incur from court filing fees if they instituted lawsuits against each individual intellectual property defendant. Id.; *see*, Northern District of Illinois' Fee Schedule ("Civil Filing Fee $402.00"). However, since litigation against the vast majority of defendants named in these cases will result in default judgments, plaintiffs' equitable remedies - that they can actually recover from defendants - bear a substantial risk of being unable to remedy the harm inflicted upon their brand and business due to excessive infringement. *See e.g.*, Entm't One UK Ltd. v. 2012 Shiliang, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019) (indicating how most defendants in these online infringement cases result in default judgments). Plaintiff in this case has named 141 Defendants who are blatantly infringing Plaintiff's trademark. [Dkt. 1]. To pursue individual cases would cost Plaintiff $57,105 in filing fees, creating an extra 140 cases to add to the Court's docket(s), and assuming a huge risk that Plaintiff could not adequately recoup those expenses when most defendants are likely judgement proof. [Dkt. 1 at ¶¶ 29-30]. The rationale in Estée Lauder I and H-D U.S.A. will create an enormous financial burden on intellectual property owners' efforts to combat endless online infringement where adequate remedies to the harm inflicted on their reputation are seldom achieved. Bulgari, S.p.A. v. P'ships et al., 2014 WL 3765854 at *2 (N.D. Ill. July 29, 2014) (referring to intellectual property infringement: "[i]t is not possible to establish the extent, either geographic, in time, or degree of the resulting damage to reputation. Thus, proving the amount of loss in monetary value is seldom possible. Indeed, once consumer confidence is lost there is no magic formula for regaining it."). Allowing joinder at this stage will best lead to the most cost-efficient resolution of this matter. Shambour v. Carver Cnty., 2014 WL 3908334, at *6 (D. Minn. Aug. 11, 2014) ("joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping [plaintiff's] claims together is not only permissible but preferable."). Cases like the present one are one of the few effective mechanisms for stopping and deterring online infringement. In sum, Plaintiff's well pleaded allegations establish that the named Seller Aliases are participating in the same unlawful occurrence or series of occurrences and that

joinder is proper. If, in the often minority of circumstances, an individual Defendant comes forth and demonstrates that joinder is improper with respect to them specifically, this Court may sever the indicated Defendant on its own or order the Plaintiff to cure the deficiency in Plaintiff's pleadings. Fed. R. Civ. P. 21; UWM Student Ass'n v. Lovell, 888 F.3d 854, 863 (7th Cir. 2018).

## Conclusion

Joinder is proper in this case. The unique nature of Plaintiff's claims and Defendants' infringing behavior on ecommerce platforms necessitate joinder in this matter. If this Court is to provide any meaningful avenue of relief for intellectual property owners - in this case and in future matters - then the Court must provide said owners a practical means to enforce their rights. Indeed, cases like this one have proven effective at substantially reducing online counterfeiting and infringement and this Court should allow joinder of the Schedule A Defendants. *See*, *e.g.*, Luxottica, 2015 WL 3818622, at *5; Entm't One, 384 F. Supp. 3d at 947. Plaintiff respectfully requests this Court find proper Joinder in this matter pursuant to Fed. R. Civ. P. 20.

Dated: January 29, 2024

Respectfully submitted,

/s/Ilya G. Zlatkin
Zlatkin Cann Entertainment
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zce.law

Counsel for Plaintiff